## Western Union Telegraph Company v. Thomas Gilleran.

### Gen. No. 12,445.

1. ELEVATOR—*when servant assumes risk incident to use of.* A servant who had assisted in loading an elevator and who had gone in and out of the same a dozen times, must be held to have assumed the risk of the absence of a gate from such elevator.

2. CONTRIBUTORY NEGLIGENCE—*when servant guilty of.* Where a servant places himself in an obviously dangerous position, he is not in the exercise of reasonable care, and if injured by reason of such position he cannot charge the master with its consequences.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed May 7, 1906.

**Statement by the Court.** October 15, 1901, appellee, then eighteen years of age, entered the employ of appellant as a workman in its supply house in the city of Chicago. This building is four stories in height. Stock was moved from one floor to another by means of a freight elevator, which had been so used for about eight years prior to the date of the accident. The elevator consisted of a platform with side beams. A railing ran around three sides of the platform. The west side opposite the floor openings in the shaft was unprotected.

November 1, 1901, the foreman of appellant told appellee and two other workmen, Smith and Frieberg, to go down to the ground floor and bring up to the third floor by means of the elevator a load of excelsior. They went down. Appellee and Frieberg piled the excelsior in the elevator, leaving standing room at the front or west side of the platform. Then Smith took charge of the running of the elevator, standing next the cable, which was at the northwest corner of the platform. Next south of Smith in this clear space and facing west stood John Van Bershot, a man six feet high, weighing about 225 pounds. Next south of him and in this same space stood appellee. He was facing east with his arms on the top of the bales of excelsior. Frieberg sat

on the bales. As the elevator approached the second floor Gordon Woods, also an employee, who stood near the shaft opening, reached in and struck appellee on the head. Woods testifies: "I hit him a pretty good soak, because it put his hat down about over his ears." Whether appellee moved or stood still when he was struck is disputed. When the platform was passing the second floor appellee's right heel was caught between that floor and the edge of the platform, and thus the injuries of which he complains were inflicted.

Appellee brought this suit to recover damages. On the trial at the close of appellee's testimony, appellant moved the court to instruct the jury to find it not guilty. The court denied the motion. This motion was renewed at the close of all the evidence, and was again denied. The jury found a verdict in favor of appellee in the sum of $1,500. Judgment was entered thereon, and this appeal followed.

WEST, ECKHART & TAYLOR, for appellant.

THEODORE G. CASE, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

There is no claim made by appellee that the elevator was not built in the usual way freight elevators are constructed, or that it was out of order, or that it was not operated in a skilful manner, or that the edge of the second floor protruded into the elevator shaft. Appellant had nothing to do with the loading of the elevator. Appellee and his fellow-workman Frieberg placed the bales of excelsior in the car. They intended to leave, and apparently did leave, a space at the front of the platform sufficiently wide for one in the use of reasonable care to stand in safety. Smith stood sideways on this space and operated the cable and was not injured. Van Bershot, a man presumably much larger than appellee then was, occupied a part of this space and escaped unhurt. But even if the space was so scant as to make its use dangerous, this condition cannot be charged to appellant, for the situation was created by appellee, and of that situation appellant had no knowledge.

It was open and apparent to appellee that this elevator had no gate at the side next the shaft openings. He assisted in loading the elevator, and in so doing went in and out of it a dozen times. He had but to look to see that no such gate was there. He must be held to know that which was before his eyes and comprehensible at a glance. McCormick M. Co. v. Zakzewski, 220 Ill. 522, 527; C., I. & L. Ry. Co. v. Barr, 204 Ill. 163, 167.

In the McCormick case, *supra*, the appellee was injured by the falling over of a stack of lumber near which he was working. The only cause assigned for the falling of the stack was that it was too high and too narrow. The court say, in reversing the judgment of the trial court and its affirmance by this court, upon the ground that the risk was assumed by the servant: "The height and width of the west stack were not latent defects which required inspection by appellee in order to discover them. If the stack was too high for its width, it was only necessary for a man experienced in piling and stacking lumber, as the evidence conclusively shows appellee was, to look at it to discover that defect. It was open and apparent to him."

In the Barr case, *supra*, the deceased, while the engine on which he was riding was in motion, attempted to climb up the rear of the tender in order to place a flag in a box which stood on the top of the tender. There was no ladder at the back of the tender. In the effort to spring from the drawbar to catch the top of the tender, the deceased failed to reach the top of the tender in safety and fell to his death. The court say: "The absence of a ladder was open and visible, and there was no latent or concealed defect or imperfection about the tender."

So here, the absence of a gate on this platform was open and visible to every one of these employees, however inexperienced; and appellee must be held to have known of its absence.

The necessary and practical construction of a freight elevator renders it less safe for persons riding thereon than is an elevator built for the use of passengers only. One

standing in a freight elevator, knowing that one side of the platform is unguarded, must be held to know that if his foot or any other part of his body projects over that unprotected edge, he is liable to be injured by coming in contact with the walls of the shaft as the elevator passes upward. Hence, it is his duty, in the exercise of reasonable care for his personal safety, to take a position which will render such an accident improbable.

In the case at bar there was room on the platform for appellee to stand in safety, had he used due care. Instead of facing the opening, he voluntarily turned his back to it, and leaned over, resting his arms on the bales of excelsior. This position naturally tended to cause him to put his feet nearer the edge of the platform than he would have done had he stood upright facing the point of danger.

Where a servant places himself in an obviously dangerous position he is not in the exercise of reasonable care, and if injured by reason of such position, he cannot charge the master with its consequences. Werk v. Ill. Steel Co., 154 Ill. 436; Brown v. Siegel, Cooper Co., 191 Ill. 234; Beidler v. Branshaw, 200 Ill. 425; C. & E. I. Ry. Co. v. Heerey, 203 Ill. 496; N. C. Street Ry. Co. v. Cossar, 203 Ill. 614; Chicago Terminal Ry. Co. v. Schiavone, 216 Ill. 279.

The evidence upon this point is not conflicting. We can draw but one conclusion from it, *i. e.*, that appellee was guilty of negligence which contributed to the injury for which he sues.

The judgment of the Superior Court is reversed.

*Reversed.*